MATTHEW N. FALLEY (SBN 192493)
MFalley@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Tel: 310.553.3610
Fax: 310.553.0687

PARNA A. MEHRBANI, *Admitted Pro Hac Vice*
mehrbanip@lanepowell.com
LANE POWELL PC
602 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Tel: 503.778.2100
Fax: 503.778.2200

Attorneys for Defendants
DWFRITZ AUTOMATION, INC., and JIM
XIONG, erroneously sued as JIM JONG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WEST DISTRICT

| | |
|---|---|
| VBCONVERSIONS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DWFRITZ AUTOMATION, INC., an Oregon Corporation; JIM JONG aka JIM XIONG; DOES 1-10, inclusive,<br><br>Defendant. | Case No. CV11-06845 PA(JCx)<br><br>Assigned To: Hon. Percy Anderson<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Declaration of Mike Fritz and Exhibits thereto; Declarations of Jim Xiong and Michael Tanguay; Separate Statement of Uncontroverted Facts and Conclusions of Law; and [Proposed] Judgment file concurrently herewith]<br><br>Date: June 15, 2012<br>Time: 1:30 p.m.<br>Ctrm: 15<br><br>Date Action Filed: August 19, 2011 |

29414-00002/1832774.1

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 15, 2012, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Percy Anderson, United States District Judge, located in the United States Courthouse, Courtroom 15, 312 North Spring Street, Los Angeles, California defendants DWFritz Automation, Inc. ("DWFritz") and Jim Xiong (incorrectly sued as Jim Jong) (collectively, "Defendants") will appear and move the Court for partial summary judgment as to the Fifth Claim for Relief alleged by plaintiff VBConversions LLC ("VBC").

Defendants make this motion pursuant to Rule 56 of the Federal Rules of Civil Procedure and Central District Local Rule 56-1, on the grounds that no material issues of fact exist regarding VBC's Fifth Claim for Relief under 17 U.S.C. § 1202(b), and the claim should be dismissed because (1) DWFritz did not alter or remove information conveyed "in connection with copies of a work" as is required by 17 U.S.C. § 1202(c) and (2) the title of VBC's program in the output does not qualify as "copyright management information" under 17 U.S.C. § 1202(c).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Mike Fritz, Jim Xiong, and Michael Tanguay and all supporting evidence filed concurrently herewith, the accompanying Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith, all of the records, pleadings and papers on file in this action, and upon such further oral or documentary evidence as may be presented at or before the hearing on this motion.

///
///

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

29414-00002/1832774.1

1

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This Motion is made in accordance with the Court's order of April 30, 2012. The Motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on May 4, 2012.

DATED: May 14, 2012

                GREENBERG GLUSKER FIELDS
                CLAMAN & MACHTINGER LLP


By: /s/ Matthew N. Falley


LANE POWELL PC
   Parna A. Mehrbani, *Pro Hac Vice*

Attorneys for Defendants
DWFritz Automation, Inc. and Jim Xiong, erroneously sued as Jim Jong

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | BACKGROUND FACTS RELEVANT TO MOTION | 1 |
| II. | ARGUMENT | 4 |
| | A. Defendants Meet the Standard for Summary Judgment | 4 |
| | B. The Information That VBC Claims was Removed Does Not Qualify for Copyright Management Information Protection As a Matter of Law | 5 |
| |     1. DWFritz did not alter or remove copyright management information conveyed "in connection with copies of a work" as the statute requires | 5 |
| |     2. The title of VBC's program is not copyright management information because it was not intended to protect or manage the copyrighted work | 9 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1929) ................................................................................ 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................................ 4

*IQ Group v. Wiesner Publ'g, Inc.*,
  409 F. Supp. 2d 587 (D.N.J. 2006) ....................................................................... 10

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) ................................................................................................ 4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................ 4

*Murphy v. Millennium Radio Group, LLC*,
  650 F.3d 295 (3rd Cir. 2011) .................................................................................. 6

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
  2004 U.S. Dist. LEXIS 23052 (E.D. Pa. Nov. 12, 2004) ................................ 10, 11

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ................................................................................ 4

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) .................................................................................. 4

**STATUTES**

17 U.S.C. § 1202(b) ......................................................................... 1, 3, 4, 5, 6, 10, 11, 12

17 U.S.C. § 1202(c) ..................................................................................................... 6, 7, 9

17 U.S.C. § 1202(c) and (2) ............................................................................................... 5

Fed. R. Civ. P. 56(e) .......................................................................................................... 5

**OTHER AUTHORITIES**

NIMMER ON COPYRIGHT § 12A.10 ..................................................................................... 6

S. Rep. No. 105-190 (1998) ...................................................................................... 7, 9, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants DWFritz Automation, Inc. and Jim Xiong (incorrectly sued herein as Jim Jong) (collectively, "defendants") hereby move for partial summary judgment to dismiss Plaintiff VBConversions LLC's ("VBC" or "plaintiff") Fifth Claim for Relief alleging violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b).

## I.

## BACKGROUND FACTS RELEVANT TO MOTION

DWFritz specializes in integrating intelligent machine vision, robotics, and high precision technologies to solve automation challenges. Statement of Uncontroverted Facts ("SUF") No. 1; Declaration of Mike Fritz ("Fritz Decl.") ¶ 4. DWFritz develops custom automation systems for medical devices, consumer products, industrial semiconductor manufacturers, solar technologies, and other applications. *Id*; Second Amended Complaint ¶ 7. To facilitate its business model, DWFritz employs engineers and computer programmers to write programming code for use in DWFritz's projects. SUF No. 1; Fritz Decl. ¶ 5.

In 2010, DWFritz had an interest in transferring existing software code, which was written in the VisualBasic ("VB") programming language, to the C# (pronounced "C sharp") programming language. Fritz Decl. ¶ 6. The VB programming language has become less useful to DWFritz, and the company was and has been looking to convert the VB code to C# to use with different applications. *Id.* To save time, DWFritz decided to convert its existing code rather than starting from scratch to write new C# programming code. *Id.*

Defendant Jim Xiong, an engineer and programmer at DWFritz, was assigned the task of converting the VB code to C# for one of DWFritz's new projects. SUF No. 4; Declaration of Jim Xiong ("Xiong Decl.") ¶ 3; Second Amended Complaint ¶ 8. To begin the process, Xiong used the Google search

engine to search for shared programs allowing conversion of code. Xiong Decl. ¶ 4. He located VBC's program, VB.Net to C# Converter, on a shareware website. *Id.* On the shareware website, VBC's program was advertised a free limited time trial offer. *Id.* As VBC states in its Second Amended Complaint, "VBC subscribes to the Shareware philosophy of offering its programs for a limited time to potential purchasers." SUF No. 5; Second Amended Complaint ¶ 10. Xiong downloaded VBC's program (SUF No. 6; Xiong Decl. ¶ 4), intending to use it only during what he believed was a free limited time trial offer (Xiong Decl. ¶ 4). Using what was referred to on the shareware website as an "evaluation registry code" (meant to encourage sharing and permit limited time access to programs), Xiong was able to activate VBC's program. Xiong Decl. ¶ 5. He installed VBC's program on DWFritz's computer believing that he was only accessing the authorized trial version using the evaluation registry code provided. *Id.*

In converting the code for DWFritz's project, Xiong first used Microsoft Visual Studio to convert DWFritz's VB program to the VB.NET language. *Id.* ¶ 6. Xiong next corrected and restructured the VB.NET program. *Id.* The corrections included modifying and restricting the program to correct errors. *Id.*

Xiong then attempted to use VBC's program for the purpose for which it was created—to convert VB.NET code to C#. SUF No. 7; Xiong Decl. ¶ 7. However, the output file that VBC's program generated had many errors, to the point of being unusable. Xiong Decl. ¶ 7. Xiong ran the program several more times, attempting to generate a correct conversion. *Id.* All of Xiong's attempts produced similar error-ridden output files. *Id.* Xiong eventually spent approximately 40 hours manually converting DWFritz's VB code to C#. SUF No. 7; Xiong Decl. ¶ 8.

Using what it refers to as a "tracking system," VBC was able to detect Xiong's downloading and use of its program along with additional information such as the dates and times when Xiong ran the program, the name of the computer and server that ran the program, Xiong's username, and other identifying

information. Second Amended Complaint ¶ 11. Relying on this tracking information, VBC claims that Xiong installed VBC's program using an unauthorized key instead of an evaluation registry code and that Xiong copied the output file generated by the VBC program for DWFritz's project. *Id.* ¶ 19.

VBC's counsel wrote to DWFritz alerting the company to its copyright infringement allegations on May 6, 2011. DWFritz provided VBC with the manual conversion files that resulted from Xiong manually translating the VB.NET code to C#. on August 22, 2011. SUF No. 12; Fritz Decl. ¶¶ 7-8, Exhs. 1 - 3.

VBC claims that, in manually converting the code, Xiong "borrowed liberally from the C# Output that was the result of" using VBC's program. SUF No. 13; Second Amended Complaint ¶¶ 43, 46. VBC alleges that in "misappropriat[ing] a line of code from plaintiff," DWFritz "conceal[ed] the words 'VB.Net to C# Converter,' the title of the copyrighted program." SUF No. 14; Second Amended Complaint ¶ 44. More specifically, in converting DWFritz's existing VB.NET code to C#, VBC's program produced the following output line: "*///Added by the VB.Net to C# Converter to support default instance behaviour in C#.*" *Id.* When Xiong manually converted DWFritz's code, his corresponding line of code stated: "*///Converter to support default instance behaviour in C#.*" *Id.* VBC claims that the alleged alteration of the code to remove the name of VBC's program is a violation of 12 U.S.C. §1202(b) because it altered copyright management information. SUF No. 8; Second Amended Complaint ¶¶ 43-46.

Contrary to plaintiff's position, as a matter of law Xiong's decision not to include the title of VBC's program in his own output cannot be the basis for a copyright management information claim. As described below, this claim is based on the output files, which are translations of DWFritz's proprietary code files. VBC does not own any copyright in the *output* files generated from its program.[1]

---

[1] VBC asserts only that it owns a copyright registration in its software program. SUF No. 10; Second Amended Complaint ¶¶ 18-27. It does not assert ownership of the output files, nor can it. SUF No. 15; Second Amended Complaint ¶¶ 18-27.

## II.

## ARGUMENT

### A. Defendants Meet the Standard for Summary Judgment.

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party is not entitled to rely on mere allegations or conclusory statements, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990); *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). There is no affirmative evidence that an issue of material fact is genuine for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

Actions arising under the Copyright Act must adhere to the same summary judgment standard as any other civil action. *Shaw v. Lindheim*, 919 F.2d 1353, 1358-59 (9th Cir. 1990). Copyright claims can be resolved on summary judgment where there is no dispute of material fact. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1929). Summary judgment is proper in this case to dismiss VBC's fifth claim for relief under 17 U.S.C. § 1202(b).

/ / /

/ / /

### B. The Information That VBC Claims was Removed Does Not Qualify for Copyright Management Information Protection As a Matter of Law.

No material issues of fact exist as to VBC's fifth claim for relief under 17 U.S.C. § 1202(b) because (1) DWFritz did not alter or remove information conveyed "in connection with copies of a work" as is required by 17 U.S.C. § 1202(c) and (2) the title of VBC's program in the output does not qualify as "copyright management information." For these reasons, the Court should grant summary judgment dismissing VBC's copyright management information claim.

#### 1. DWFritz did not alter or remove copyright management information conveyed "in connection with copies of a work" as the statute requires.

The copyright management information statute, 17 U.S.C. § 1202(b) states

> No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

enable, facilitate, or conceal an infringement of any right under this title.

This statute "prohibit[s] defacing or altering the title page of a book, but it also forbids deletion of the electronic information that may accompany a computer file containing a copyrightable composition." NIMMER ON COPYRIGHT § 12A.10. As an example, a copyright management information claim would arise when an employee of a magazine scans a copyrighted photograph featured in the magazine, removes the "gutter credit" identifying the author of the photograph, and then posts the altered photograph to websites. *See Murphy v. Millennium Radio Group, LLC*, 650 F.3d 295 (3rd Cir. 2011). Another classic example of a copyright management information claim is removal of a digital watermark encrypted in an electronic file of a movie.

The text of 17 U.S.C. § 1202(b) expressly requires that, to qualify as "copyright management information," the information must be conveyed ***in connection with copies*** or phonorecords ***of a work*** or performances or displays of a work, including in digital form. 17 U.S.C. § 1202(c) (emphasis added). SUF No. 9. The statute specifies that the so-called "copyright management information" must be removed from or altered in *a copy of an actual copyrighted work* in which the complaining party has some right or interest, such as the photograph or movie described above. VBC's allegations in its Second Amended Complaint fail to meet this requirement. The copyrighted "work" at issue in this case is VBC's software program. *See* SUF No. 3; Second Amended Complaint ¶¶ 9, 18-27 and Ex. A. VBC has not and cannot allege removal of information conveyed in connection with "copies of" that "work."

Instead, VBC claims that Xiong deleted the name of VBC's program from the C# *output file* that VBC's program generated. SUF Nos. 14, 17; Second Amended Complaint ¶¶ 43-46. In other words, when Xiong used VBC's program to convert the proprietary VB.NET code owned by DWFritz to C#, the program

generated a new file—an output file that was a translation of DWFritz's own code. Neither VBC nor its program wrote any code; the program simply engaged in a conversion from one language to another. (Similar to the functionality of Google's translation software offered at http://translate.google.com, which automatically converts English to Spanish or any number of other languages.) However, the output that the program produced was full of errors, so Xiong ended up manually converting the code himself. SUF No. 7; Xiong Decl. ¶ 7. VBC claims that Xiong copied certain portions of the error-ridden output produced by VBC's software program when he manually converted the code. SUF No. 13; Second Amended Complaint ¶ 46. VBC alleges that when Xiong copied the output as part of his manual-rewrite process, he removed the name of VBC's software program. SUF No. 14; Second Amended Complaint ¶¶ 44-45. Based on VBC's allegations alone, no disputed issues of fact exist. It is undisputed that DWFritz did not alter or remove information conveyed in connection with *copies* of VBC's *work* (the software program). SUF No. 3; Second Amended Complaint ¶ 9 and Exh. A. Instead, VBC alleges that Xiong removed information conveyed in connection with the completely separate *output* file. *Id.* The output file is neither the work at issue nor could it be because it is not owned by VBC. (And VBC does not and cannot allege as much.) SUF Nos. 10, 15; Second Amended Complaint ¶¶ 18-27. The output file is a mere translation of DWFritz's own proprietary code file.

Thus, as a matter of law, VBC's fifth claim for relief does not meet the requirements of the plain statutory language. 17 U.S.C. § 1202(c) (as explained above, to qualify as "copyright management information," the information must be conveyed **"*in connection with copies * * * of a work * * *.*"** (emphasis added.)). SUF No. 9. As the Senate Committee Report states, [copyright management information "]CMI["] is meant to "assist in tracking and monitoring uses of ***copyrighted works***, as well as licensing of rights and indicating attribution, creation and ownership." S. Rep. No. 105-190 (1998) (emphasis and definition of acronym

added). SUF No. 16; VBC's Reply in Support of Motion to Amend at p. 8. If Xiong had removed the attribution to VBC from a *copy* of *VBC's copyrighted software program*, VBC might have a copyright management information claim.

That is not what happened here. While VBC can claim a copyright in the software program itself, the completely separate output files that the program generates change with every different conversion and are not copyrightable by VBC. By way of example, if a lawyer were to use Google's translation program to translate a brief into Spanish, Google would not own the copyright in the Spanish brief, nor would Google be able to prevent the lawyer from revising that Spanish brief in any way. But, of course, Google would continue to own a copyright in the software program used to make the translation occur. To take this example a step further, if a party were to copy Google's translation itself program and offer it as a competing product, removing Google's logo, a claim might exist for removal of copyright management information.

The same is true in this case—the discussion simply centers on computer languages rather than human idioms. VBC cannot own a copyright in the translated code because VBC does not see, use, or have access to the translations. Rather, each entity using VBC's software program plugs in its own proprietary programming code files and generates the translated output. VBC never sees or controls that translated output. In fact, the only reason VBC had access to the output in this case was because DWFritz provided it in good faith discussions during the preliminary stages of this case. As alleged thrice by VBC in the various iterations of its complaint, it only owns a copyright in its software program—VBC does not and cannot allege copyright ownership or infringement of any particular output file, but only of the copyrighted software program itself. SUF Nos. 3, 10, 15; Second Amended Complaint ¶¶ 9, 18-27 and Exh. A. The alleged removal of a name from the output of VBC's program is not removal of 'copyright management information" as that term is defined as a matter of law because it does not involve

tampering with a copyrighted work. *See* 17 U.S.C. § 1202(c); *see also* S. Rep. No. 105-190 (1998) (cited above). These facts are undisputed.

### 2. The title of VBC's program is not copyright management information because it was not intended to protect or manage the copyrighted work.

Pursuant to 17 U.S.C. § 1202(c), copyright management information can include:

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
>
> (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
>
> (6) Terms and conditions for use of the work.
>
> (7) Identifying numbers or symbols referring to such

information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

While the title of a work is one example of potential copyright management information, just the title of a work alone is not enough to qualify for protection under Section 1202. "To come within § 1202, the information removed ***must function as a component of an automated copyright protection or management system***." *IQ Group v. Wiesner Publ'g, Inc.*, 409 F. Supp. 2d 587, 594-598 (D.N.J. 2006) (emphasis added.) "The purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy. . . . Such information will assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership." S. Rep. No. 105-190 (1998). SUF No. 16; VBC's Reply in Support of Motion to Amend at p. 8. "Section 1202(b) prohibits the intentional removal or alteration of CMI with reasonable grounds to know the removal or alteration will aid infringement." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2004 U.S. Dist. LEXIS 23052, *44 (E.D. Pa. Nov. 12, 2004).

VBC has not and cannot allege that the inclusion of its name in the translation output file was meant to protect or manage its copyrighted work. As a preliminary matter, as stated above, the name was not attached to any copies of the copyrighted work—the software program. Rather, the name was simply generated in the converted code as part of the physically separate output file, and, thus, could not practically be used to manage the software program.

More importantly, the name of VBC's program in the code appears after a sequence of code that is regularly used by programmers. SUF 18; Declaration of Michael Tanguay ("Tanguay Decl.") ¶ 3. Called the Singleton Approach, the code

that VBC's program generated is a pattern of code frequently used by programmers to coordinate actions across the system. *Id.* The table below shows the generally known Singleton Approach[2] and the code that VBC's program generated:

| Singleton Approach | VBC's Program Output |
|---|---|
| public static Singleton Instance()<br>{<br>  get<br>  {<br>    if (_instance == null)<br>    {<br>      _instance = new Singleton();<br>    }<br>    return _instance; | public static dlg2dReader Default<br>{<br>  get<br>  {<br>    if (defaultInstance == null)<br>    {<br>      defaultInstance = new dlg2dReader();<br>      defaultInstance.FormClosed += new FormClosedEventHandler (defaultInstance_FormClosed);<br>    }<br>    return defaultInstance; |

As can be seen from the table, all VBC's program did was use the Singleton Approach to support the default instance. By comparing the code generated by VBC's program to the basic Singleton Approach, the only difference is the replacement of "dlg2dReader" for "Singleton." The Singleton Approach, and thus, the approach used by VBC's program, has been known and in the public domain for years. SUF No. 18; Tanguay Decl. ¶ 3. In fact, a search on the Google search engine generates thousands of results showing that the Singleton Approach is widespread, functional, and not unique. *Id.* DWFritz programmers frequently employ the approach in writing code. *Id.*

The placement of the language "*///Added by the VB.Net to C# Converter to support default instance behaviour in C#*" before the Singleton Approach was

---

[2] Obtained from Microsoft.com (http://msdn.microsoft.com/en-us/library/ff650316.aspx). *See* SUF No. 18; Tanguay Decl. ¶ 3.

instance." When Xiong used "///*Converter to support default instance behavour in C#.*" This was Xiong's way of saying, "The person converting this program will use the Singleton Approach for this instance."

The point is that the name of VBC's program could never have been intended to protect or manage a copyrighted work consistent with the intent set forth in the Senate Committee Report and the case law because the name was used in conjunction with a portion of the code that was a known, public domain approach to code conversion. That is, there was nothing copyrightable about it. In addition, the name of VBC's program was not used to protect VBC's *copyrighted work*—its software program—from infringement, but rather to describe the approach used by the program to generate the code in a separate output file in which VBC has no ownership interest. The name of VBC's program as used in the output file is not copyright management information as a matter of law nor is there any disputed issue of material fact that can affect such a determination. As such, summary judgment in favor of defendants should be granted on VBC's Fifth Claim for Relief under 17 U.S.C. § 1202(b).

## III.

## CONCLUSION

For the reasons stated above, defendants respectfully request that the Court grant partial summary judgment in their favor on VBC's Fifth Claim for Relief.

DATED: May 14, 2012

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: /s/ Matthew N. Falley

LANE POWELL PC
　Parna A. Mehrbani, *Pro Hac Vice*

Attorneys for Defendants
DWFritz Automation, Inc. and Jim Xiong, erroneously sued as Jim Jong